Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SUCN. RAMÓN VÁZQUEZ TORRES Y OTROS<br><br>Peticionarios<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE CAROLINA Y OTROS<br><br>Recurridos | TA2026AP00393 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>F CD2007-0353<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Lebrón Nieves[1], el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 25 de junio de 2026.

Comparece la Sucesión de Ramón Vázquez Torres, compuesta por Marisel Vázquez Delgado y Ramón Vázquez Delgado (en adelante, parte apelante), mediante un recurso de apelación, para solicitarnos la revisión de la *Sentencia* emitida el 26 de febrero de 2025, notificada el 21 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina.[2] Mediante la *Sentencia* apelada, el foro de instancia declaró *No Ha Lugar* la *Demanda* interpuesta por la parte apelante.

Sobre dicha determinación, la parte apelante incoó una oportuna *Moción en solicitud de reconsideración bajo la Regla 47 de las de Procedimiento Civil y Determinaciones de hechos adicionales o enmendadas bajo las Reglas 43.1 y 43.2.*[3] La solicitud de reconsideración fue denegada mediante *Orden* del 10 de junio de

---

[1] Mediante Orden Administrativa OATA-2026-044 del 4 de mayo de 2026, se designó a la Hon. Gloria L. Lebrón Nieves para entender y votar en el caso de epígrafe en sustitución de la Hon. Laura Ivette Ortiz Flores, por esta haber dejado de ejercer funciones como Jueza del Tribunal de Apelaciones.

[2] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1, Apéndice 3, Exhibit XXIII, págs. 607-628.

[3] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XXIV, págs. 629-640.

2025, notificada el 20 del mismo mes y año.[4] Por otro lado, la solicitud sobre determinación de hechos adicionales o enmendadas fue denegada mediante *Orden* del 11 de febrero de 2026, notificada el 17 del mismo mes y año.[5]

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

Comenzamos por recordar que el caso del título ha tenido trámite apelativo previo, tanto ante este foro intermedio como ante el Alto Foro.[6] Dado a lo anterior, nos circunscribiremos a aquellos asuntos concernientes al recurso ante nuestra consideración.

El presente caso tuvo sus inicios cuando, el 27 de febrero de 2007, el señor Ramón Vázquez Torres, q.e.p.d. (señor Vázquez Torres), presentó una *Demanda* en cobro de dinero en contra del Municipio Autónomo de Carolina (Municipio o parte apelada).[7] Adujo haber otorgado un contrato de servicios profesionales (Contrato) con el Municipio, mediante el cual se comprometió a realizar una investigación relacionada a posibles deudas que tuviese la Autoridad de Energía Eléctrica (AEE) con el Municipio. Esbozó que, producto de su trabajo, se logró un acuerdo transaccional a favor del Municipio. Según se desprende, el alegado acuerdo transaccional fue por la suma de $6,326,214.47 dólares. Indicó que,

---

[4] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XXVI, pág. 644.

[5] *Íd.*, a la Entrada Núm. 1, Apéndice 3, Exhibit XXVII, pág. 645. Dicha solicitud fue resuelta luego de que este foro apelativo, mediante la *Sentencia* emitida por un Panel hermano, en el alfanumérico TA2025AP00260, desestimara un recurso de apelación incoado por la parte apelante, luego de razonar que el mismo era prematuro. Lo anterior, tras concluir que el foro de instancia solo atendió la solicitud de reconsideración interpuesta, no así la de determinaciones de hechos adicionales presentada en el mismo pliego. El *Mandato* fue remitido el 6 de febrero de 2026.

[6] Los recursos atendidos previamente por este Tribunal de Apelaciones corresponden a los alfanuméricos KLAN201301217; KLCE202200017, y TA2025AP00260. Mientras que el que fue elevado al Tribunal Supremo se identificó con el alfanumérico CC-2014-0660. Mediante este último recurso, la parte apelante presentó ante el Alto foro su informidad con los resuelto por el Tribunal de Apelaciones en el alfanumérico KLAN201301217. Así, pues, mediante *Sentencia* emitida el 4 de mayo de 2016, el Tribunal Supremo revocó lo resuelto por la primera y segunda instancia judicial.

[7] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit I, págs. 001-003.

conforme a los términos del Contrato, este era acreedor del diez por ciento (10%) del beneficio económico obtenido por el Municipio, a raíz de su gestión. A tenor, reclamó la suma de $632,621.47 dólares.

En respuesta, el 1 de mayo de 2007, el Municipio presentó su contestación a la demanda. En ella, negó las alegaciones y razonó que las mismas no justificaban la concesión de un remedio, aduciendo que la deuda era inexistente. Arguyó que, de existir alguna obligación por parte del Municipio, la cuantía solicitada era exagerada y contraria al orden público.

Conviene mencionar que, pasado algunos eventos procesales, el 21 de abril de 2010, las partes presentaron un *Informe de conferencia con antelación a juicio.*[8] En esa misma fecha se celebró una vista en la cual, entre otros asuntos, el tribunal de instancia concedió término a las partes para presentar estipulaciones de hechos.[9]

Así las cosas, el 9 de junio de 2011, las partes presentaron un nuevo *Informe de conferencia con antelación a juicio.*[10] Puntualizamos que, en lo atinente, las partes estipularon que el 19 de marzo de 1999, otorgaron un Contrato y estipularon que ese fue el único contrato suscrito entre las partes. Además, estipularon que el Municipio obtuvo la certificación de la Oficina del Contralor del referido Contrato. Estipularon, además, la referida certificación.

Tras varios incidentes procesales innecesarios reseñar, el 4 de diciembre de 2012, el Municipio presentó una solicitud reiterando que procedía la desestimación de la causa de acción o, en la alternativa, que se dictara sentencia sumariamente.[11] En reacción,

---

[8] Véase Autos Originales ante el Tribunal de Primera Instancia (TPI). Puntualizamos que dichas estipulaciones contienen añadiduras y tachaduras.
[9] Véase Autos Originales ante el TPI.
[10] *Íd.*
[11] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit VI, págs. 068-101.

el señor Vázquez Torres se opuso y peticionó al foro primario que dictara sentencia sumaria a su favor.[12]

En respuesta, mediante *Sentencia* emitida el 15 de mayo de 2013, notificada el 29 del mismo mes y año,[13] el tribunal *a quo* declaró *No Ha Lugar* la *Demanda* incoada. El foro de instancia concluyó, en síntesis, que el señor Vázquez Torres no tenía derecho a percibir los honorarios contingentes pactados, dado a que el Municipio no recibió ningún beneficio económico por los servicios profesionales prestados durante la vigencia del contrato.

Tras haber quedado disconforme con lo resuelto, el señor Vázquez Torres interpuso un recurso apelativo en el alfanumérico KLAN201301217.[14] Acotó que el foro de instancia se había equivocado al dictar una sentencia desestimatoria en su contra, bajo el fundamento de que los hechos ciertos e incontrovertidos evidenciaban la procedencia de su reclamo, así como que razonó que también se equivocó en la interpretación del contrato suscrito entre las partes. De ahí, el 12 de mayo de 2014, notificada el 21 del mismo

---

[12] SUMAC TA, a la Entrada Núm. 1, Exhibit VII, págs. 102-156.

[13] *Íd.*, Exhibit VIII, págs. 157-176.

[14] Los errores esgrimidos en este recurso apelativo fueron los siguientes:

> Incidió el TPI al dictar sentencia sumaria desestimando la demanda, contrario a los hechos ciertos e incontrovertidos que evidenciaban su procedencia y que la misma se declarara con lugar en todas sus partes evidenciando prejuicio y parcialidad, no siendo la misma resultado de un escrutinio y análisis judicial indelegable y más justiciero de los hechos, conforme a la prueba documental estipulada o presentada por la parte.

> Erró el TPI al declarar sin lugar la moción bajo las Reglas 43 y 47 de Procedimiento Civil, a pesar de su clara procedencia y no mediar oposición de la parte demandada-apelada.

> Incidió el TPI al desestimar la demanda en su totalidad, a pesar de reconocer en su Sentencia el concepto y doctrina fundamental del *quantum meriut* y no aplicarlo al caso.

> Erró el TPI al dictar sentencia sumaria sin adjudicar la solicitud de conocimiento judicial y la objeción del apelante en relación con un caso decidido por este Honorable Foro y aun así concederle valor decisivo al mismo, no obstante[,] su improcedencia e inaplicabilidad.

> Incidió el TPI al interpretar el contrato profesional entre las partes, contrario a los hechos y al derecho aplicable, dejando al arbitrio de la parte apelada su interpretación y aplicación.

mes y año, un Panel hermano de este Tribunal de Apelaciones confirmó el dictamen apelado.[15]

Aún en desacuerdo, el señor Vázquez Torres acudió mediante una petición de *certiorari* ante la última instancia judicial, en el alfanumérico CC-2014-0660, con la finalidad de que se revocara lo actuado por la primera y segunda instancia judicial. Entonces, mediante *Sentencia*, emitida el 4 de mayo de 2016, el Alto Foro revocó la *Sentencia* del Tribunal de Apelaciones.[16] En consecuencia, devolvió el caso al foro de instancia para que, en síntesis, celebrara una vista en la cual se le permitiera al señor Vázquez Torres presentar prueba que demostrara que el beneficio económico recibido por el Municipio fue producto de su trabajo. A tenor, el 2 de noviembre de 2016, el Tribunal Supremo remitió a la primera instancia judicial el correspondiente *Mandato*.[17] Igual curso de acción tomó el Tribunal de Apelaciones el 13 de diciembre de 2016.[18]

De ahí, las partes estuvieron inmersas en trámites procesales conforme a lo mandatado por el Alto Foro, lo que incluyó, pero sin limitarse, a realizar descubrimiento de prueba. Posteriormente, el 11 de septiembre de 2018, las partes presentaron un *Informe de conferencia preliminar entre abogados*.[19] Siguiendo igual curso de acción, las partes estipularon que, el 19 de marzo de 1999, otorgaron un Contrato y que ese fue el único contrato suscrito entre estos. Por otro lado, estipularon que, el 15 de marzo de 1999, el Municipio obtuvo la certificación de la Oficina del Contralor del referido Contrato y estipularon la certificación del Contrato.

Tiempo después, mediante escrito, presentado el 17 de diciembre de 2018,[20] la parte apelante informó que el señor Vázquez

---

[15] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit IX, págs. 177-199.
[16] *Íd.*, Exhibit X, págs. 200-213.
[17] Véase Autos Originales ante el TPI.
[18] *Íd.*
[19] *Íd.*
[20] *Íd.*

Torres había fallecido, por lo que, presentaría una *Primera demanda enmendada*,[21] con la finalidad de sustituir como parte al finado, para incluir a su sucesión, la cual, según se desprende de este relato, hemos denominado la parte apelante.

En respuesta, la parte apelada interpuso su *Contestación a primera demanda enmendada*.[22] Mediante este escrito, aceptó algunas de las alegaciones de la demanda enmendada y negó otras, así como que presentó sus defensas afirmativas originales e incorporó algunas otras. Entre sus defensas afirmativas, acotó que el Contrato en cuestión nunca fue registrado en la Oficina del Contralor de Puerto Rico (Oficina del Contralor), por lo cual el señor Vázquez Torres estaba impedido de prestar servicios o realizar trabajo alguno, así como que no tenía derecho de cobrar las cantidades reclamadas.

Subsiguientemente, el foro de instancia celebró varias vistas sobre el estado de los procedimientos y atravesó ciertos eventos procesales los cuales no se limitaron a un extenso descubrimiento de prueba.

Entonces, el 29 de junio de 2021, el Municipio instó una *Moción solicitando sentencia [sea] dictada sumariamente*.[23] Adujo, entre otras cosas, que no había controversia de hechos en cuanto a que el Contrato nunca fue registrado en la Oficina del Contralor. En consideración a lo anterior, solicitó que se desestimara la demanda a su favor, así como que se le condenara a la parte apelante al pago de honorarios por temeridad. Para apoyar sus argumentos, acompañó junto a su escrito, una serie de documentos, entre ellos, una Certificación negativa de la Oficina del Contralor.

---

[21] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XI, págs. 214-217.
[22] *Íd.*, Exhibit XII, págs. 218-227.
[23] Véase Autos Originales ante el TPI.

En reacción, el 3 de septiembre de 2021, la parte apelante presentó una *Moción en oposición a "Moción solicitando sentencia [sea] dictada sumariamente".*[24] Respecto al registro del Contrato, acentuó que, allá para el 2011, las partes estipularon que, el 15 de marzo de 1999, el Municipio obtuvo una Certificación de la Oficina del Contralor. Peticionó que se declara sin lugar la solicitud de sentencia sumaria y, en virtud del mandato de Tribunal Supremo, sobre la *Sentencia* notificada el 4 de mayo de 2016, se permitiera presentar prueba que demostrara que el beneficio económico recibido por el Municipio fue producto del trabajo del señor Vázquez Torres. Al igual que la parte apelante, acompañó su oposición con una serie de documentos, los cuales presuntamente apoyaban su postura.

En respuesta, el 15 de octubre de 2021, el foro de instancia emitió y notificó una *Resolución.*[25] Mediante este dictamen, declaró *No Ha Lugar* la solicitud para que se dictara sentencia sumaria, interpuesta por el Municipio y ordenó la continuación de los procedimientos. Producto de su *Resolución,* emitió treinta y nueve (39) hechos incontrovertidos, los cuales incorporamos por referencia esta *Sentencia.*[26] Por otro lado, consideró que había controversia en cuanto a lo siguiente:

> 1. Existe controversia en cuanto a la registración del contrato entre las partes en la Oficina del Contralor de Puerto Rico.
>
> 2. Existe controversia sobre las gestiones, si algunas, que realizó el señor Vázquez en cuanto al contrato otorgado entre las partes y el acuerdo de transacción entre la AEE y el

---

[24] Véase Autos Originales ante el TPI.

[25] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XIII, págs. 228-239.

[26] *Íd.,* Exhibit XIII, págs. 230-236. Respecto a los hechos incontrovertidos, destacamos los siguientes:

> 1. El 15 de marzo de1999[,] 1a Oficina del Contralor emitió una Certificación sobre el otorgamiento de un contrato en el cual, los suscribientes lo son el señor Vázquez y el Municipio. (Notas al calce omitidas).
> 2. El 19 de marzo de 1999[,] el señor Vázquez y el Municipio suscribieron un Contrato por servicios profesionales (Contrato). (Notas al calce omitidas).
> 3. Las partes estipularon que el referido Contrato fue el único contrato escrito entre las partes. (Notas al calce omitidas).

Municipio. Y si el Municipio se benefició de alguna de esas gestiones.

3. Si la parte demandada le adeuda alguna cantidad a la parte demandante por concepto de servicios profesionales.

4. Si hubo algún incumplimiento en las obligaciones contractuales entre las partes.

5. Si alguna de las partes ha incurrido en conducta temeraria.[27]

El tribunal *a quo* concluyó que las referidas controversias de hechos materiales debían ser atendidas en una vista. Así, pues, dispuso que no procedía dictar sentencia sumaria y ordenó la celebración de un juicio plenario.

En desacuerdo, el Municipio acudió a esta Curia mediante un recurso de *certiorari* en el alfanumérico KLCE202200017.[28] Sobre el

---

[27] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XIII, pág. 236.

[28] Los errores esgrimidos en este recurso apelativo fueron los siguientes:

> ERRÓ EL TPI AL NO ADMITIR Y CONSIDERAR COMO EVIDENCIA FEHACIENTE NO CONTROVERTIDA, LA CERTIFICACIÓN DE LA OFICINA DEL CONTRALOR QUE DEMUESTRA QUE EL CONTRATO SUSCRITO ENTRE EL MUNICIPIO Y EL SR. VÁZQUEZ NO FUE NOTIFICADO NI REGISTRADO, Y AL NO ADMITIR Y CONSIDERAR EL RESTO DE LAS CERTIFICACIONES DE LA OFICINA DEL CONTRALOR, REFERENTES A QUE TAMPOCO SE REGISTRARON CONTRATOS ENTRE EL MUNICIPIO Y LOS ABOGADOS CONTRATADOS POR EL SR. VÁZQUEZ PARA INSTAR RECLAMACIONES A NOMBRE DEL MUNICIPIO.
>
> ERRÓ EL TPI AL NO DETERMINAR LA NULIDAD DEL CONTRATO Y NO DICTAR SENTENCIA SUMARIA APLICANDO LAS NORMATIVAS Y DISPOSICIONES LEGALES APLICABLES ANTE EL HECHO INCONTROVERTIDO DE QUE EL CONTRATO NO SE REGISTRÓ.
>
> ERRÓ EL TPI AL NO DETERMINAR QUE EL SR. VÁZQUEZ ESTABA IMPEDIDO DE REALIZAR CUALQUIER TRABAJO SIN QUE ANTES EL CONTRATO SE REGISTRARA EN LA OFICINA DEL CONTRALOR Y NO DICTAR SENTENCIA SUMARIA A FAVOR DEL MUNICIPIO.
>
> ERRÓ EL TPI AL NO DICTAMINAR LA INSUFICIENCIA DE PRUEBA POR LA PARTE DEMANDANTE Y NO PROCEDER A DICTAR SENTENCIA SUMARIA A FAVOR DEL MUNICIPIO.
>
> ERRÓ EL TPI AL NO EMITIR DETERMINACIONES DE HECHOS QUE NO PUDIERON NI PUEDEN SER CONTROVERTIDOS POR LA PARTE DEMANDANTE Y CON ELLO, ERRÓ AL NO PROCEDER A DICTAR SENTENCIA SUMARIA A FAVOR DEL MUNICIPIO.

particular, mediante *Resolución*, emitida el 24 de febrero de 2022, un Panel hermano denegó la expedición del auto solicitado.[29]

Luego de varias instancias procesales, el 30 de agosto de 2022, las partes presentaron un *Informe enmendado de conferencia preliminar entre abogados*. Puntualizamos que, según se desprende, cada parte esbozó los hechos sobre las cuales juzgaban existía controversia. Entonces, el 7 de septiembre de 2022, se celebró vista sobre conferencia con antelación a juicio. En la vista, el tribunal de instancia dispuso dejar en suspenso la determinación sobre el antedicho Informe. Por otro lado, a solicitud de la parte apelante, le concedió término para realizar descubrimiento de prueba en torno a la controversia medular sobre si el contrato suscrito el 19 de marzo de 1999, se registró en la Oficina del Contralor conforme a derecho.

Así las cosas, el 23 de mayo de 2023, se celebró otra vista.[30] En esta, la parte apelante sugirió que, previo a señalar el juicio completo, se celebrara una vista evidenciaria para atender lo relacionado a si el contrato había sido registrado en la Oficina del Contralor, ya que lo que se determinara en la referida vista podría resolver el caso. A tenor, el foro primario señaló una vista evidenciaria, así como que ordenó a que las partes prepararan una moción conjunta que contuviera un informe con el derecho sobre contratación que estaba vigente a esa fecha, la lista de testigos, el alcance de los mismos y la prueba documental que se presentaría esa vista.

ERRÓ EL TPI AL NO ESTABLECER QUE EL SR. VÁZQUEZ INCUMPLIÓ EL CONTRATO AL UTILIZAR PERITOS (Y ABOGADOS), CONFORME SURGIÓ DEL DESCUBRIMIENTO DE PRUEBA REALIZADO LUEGO DE LA DECISIÓN DEL SUPREMO.

---

[29] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XIII, págs. 240-258.
[30] *Íd.*, Exhibit XIII, págs. 332-333.

Posteriormente, el 29 de agosto de 2023, las partes presentaron un *Informe de conferencia preliminar entre abogado*s.[31] En el Informe, las partes acordaron que el orden de la prueba se invertiría, tras haber sido el Municipio quien planteó el asunto sobre la falta de registración del Contrato. Presentaron, además, las controversias que debían ser atendidas por el tribunal de instancia. En respuesta, el foro *a quo* se dio por enterado de la presentación del Informe.

Subsiguientemente, el 26 de septiembre de 2023, se celebró la vista evidenciaria. En ella, el foro de instancia esbozó que la misma tenía el propósito de probar si el Contrato objeto de este caso fue registrado en la Oficina del Contralor.[32]

Durante la vista, el foro *a quo* recibió prueba testifical y documental. Según se desprende, ambas partes presentaron como testigo a la señora Madeline Cruz Flores (señora Cruz Flores), administradora de documentos públicos de la Oficina del Contralor.[33] La testigo fue interrogada en prueba directa, así como ampliamente contrainterrogada por cada parte en cuestión.

Como prueba documental de la parte apelante, se marcaron cuatro (4) exhibits y tres (3) identificaciones.[34] Por otro lado, la prueba documental del Municipio consistió en dos (2) exhibits y

---

[31] Véase Autos Originales ante el TPI.

[32] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XXI, págs. 381-583.

[33] *Íd.*, Exhibit XXI, pág. 381. Conviene mencionar que la parte apelante tuvo la intención de presentar al señor Roberto Quevedo como testigo, sin embargo, este fue excusado por acuerdo de las partes.

[34] Los exhibits de la parte apelante consistieron en: Exhibit 1 - Certificación del 15 de marzo de 1999; Exhibit 2 - Sentencia Parcial, caso K AC2000-0854, del 10 de junio de 2004; Exhibit 3 - Transcripción de la Deposición del Sr. Ramón Vázquez (páginas de la 1-18 y la página 74); Exhibit 4 - Lista de Disposición de contratos (1999) División de Municipios (antes Identificación 7 parte demandada). Mientras que las identificaciones consistieron en: Identificación 1 - Carta del 21 de junio de 1999; Identificación 2 - Carta 27 de octubre de 1999; Identificación 3 - Solicitud de Autorización para Contestar.

cuatro (4) identificaciones.[35] Además, se presentó prueba conjunta, la cual consistió en dos (2) exhibits.[36]

Culminada la vista, el tribunal de instancia concedió término a las partes para que presentaran memorandos, de forma simultánea. Entonces, el 29 de enero de 2024, el Municipio interpuso su *Memorado de hechos y de derecho*.[37] Mientras que, al día siguiente, la parte apelante presentó, igualmente, su memorando.[38]

Luego, el 26 de febrero de 2025, notificada el 21 de marzo de 2025, la primera instancia judicial emitió la *Sentencia* apelada.[39] Mediante este dictamen, el foro *a quo* declaró *No Ha Lugar* la *Demanda*. Como parte del dictamen emitido, el Tribunal incorporó las determinaciones de hecho previamente esbozadas en su *Resolución* del 15 de octubre de 2021,[40] así como esgrimió otras cuarenta y un (41) determinaciones de hecho, las cuales incorporamos por referencia.[41] El foro de instancia concluyó que el Contrato no fue registrado en la Oficina del Contralor, por lo que la reclamación interpuesta carecía de legitimidad.

Insatisfecha con lo resuelto, el 7 de abril de 2025, la parte apelante presentó una *Moción en solicitud de reconsideración bajo la Regla 47 de las de Procedimiento Civil y Determinaciones de hechos adicionales o enmendadas bajo las Reglas 43.1 y 43.2*.[42] Mediante este pliego, esencialmente, peticionó al foro primario que le revisara

---

[35] Los exhibits del Municipio consistieron en: Exhibit 1 - Certificación del 28 de junio de 2021 (antes Identificación 5 Parte Demandada); Exhibit 2-Certificación del 31 de julio de 2007. Mientras que las identificaciones consistieron en: Identificación 1 - Reglamento #33; Identificación 2 - Carta Circular OC-98-04; Identificación 3 - Carta Circular OC-98-05; Identificación 4 - Carta Circular OC-98-10.

[36] Los exhibits conjuntos consistieron en: Exhibit Conjunto 1 - Contrato de Servicios Profesionales de Ramón Vázquez; Exhibit Conjunto 2- Transcripción de la Deposición de la Lcda. Rosa Noemí Bell Bayron.

[37] Véase Autos Originales ante el TPI.

[38] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XXII, págs. 584-606.

[39] *Íd.*, Exhibit XXIII, págs. 607-628.

[40] *Íd.,* págs. 611-616.

[41] *Íd.*, págs. 616-619.

[42] *Íd.*, Exhibit XXIV, págs. 629-640.

nuevamente la prueba que tuvo ante sí, adoptara una serie de determinaciones de hechos que no formaron parte de la sentencia, así como que reconsiderara el dictamen arribado.

Respecto a su solicitud de determinaciones de hechos adicionales, razonó que la *Sentencia* ignoró una serie de hechos evidenciados y fundamentados que, de haber sido incluidos, serían contradictorios a varias determinaciones y conclusiones de la *Sentencia* lo que obligaría a un dictamen distinto.

Por otra parte, acotó que la Sentencia del Alto Foro constituyó la ley del caso, puesto a que adjudicó y limitó las controversias, así como que estableció una guía de instrucciones específicas en cuanto a lo que restaba por atender, cosa que no fue respetada por la primera instancia judicial.[43] Asimismo, expuso que las partes habían estipulado hacía más de diez (10) años que, el 15 de marzo de 1999, la Oficina del Contralor emitió una certificación del otorgamiento de un contrato en la cual las partes suscribientes eran el señor Vázquez Torres y el Municipio. Sin embargo, resaltó que lo anterior fue ignorado por el tribunal *a quo*. A tenor, solicitó que se declara con lugar su solicitud y, en consecuencia, se dejara sin efecto la *Sentencia* dictada.

En reacción, el 9 de mayo de 2025, la parte apelada interpuso una *Moción solicitando resolución denegando moción del demandante*.[44] En esta, arguyó que la moción presentada por la parte apelante no introdujo elementos nuevos que justificaran una reconsideración de la sentencia dictada, sino que se limitó a reiterar argumentos previamente discutidos y adjudicados por el tribunal. Planteó que el núcleo de la controversia de este caso giró en torno a si el contrato del 19 de marzo de 1999 fue debidamente remitido y registrado en la Oficina del Contralor, lo cual no pudo ser

---

[43] En el alfanumérico CC-2014-0660.
[44] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XXV, págs. 641-643.

demostrado por el expediente ni por la evidencia. Destacó que la parte apelante tuvo su oportunidad de demostrar que, en efecto, el contrato fue registrado, y no lo hizo. Así, pues, solicitó que se denegara la solicitud incoada por la parte apelante.

En respuesta, mediante *Orden* emitida el 10 de junio de 2025, notificada el 20 del mismo mes y año, el tribunal de instancia declaró *No Ha Lugar* la solicitud de reconsideración.[45]

De ahí, la parte apelante acudió a este tribunal intermedio mediante un recurso de apelación en el alfanumérico TA2025AP00260. Entonces, mediante *Sentencia* emitida el 29 de septiembre de 2025, un Panel hermano desestimó el recurso tras juzgar era prematuro.[46] Lo anterior, tras concluir que el foro de instancia no había resuelto la solicitud de determinaciones de hechos adicionales incluida en la solicitud de reconsideración.

Posteriormente, recibido el *Mandato* en el alfanumérico antes reseñado, mediante *Orden* emitida el 11 de febrero de 2026, notificada el 17 del mismo mes y año, el foro *a quo* declaró *No Ha Lugar* la solicitud de determinaciones de hechos adicionales presentada por la parte apelante.[47]

Con lo anterior en mente y en desacuerdo, el 17 de abril de 2026, la parte apelante presentó un recurso de apelación en el cual esgrimió los siguientes tres (3) señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO RECONSIDERAR O ENMENDAR LA SENTENCIA DE CONFORMIDAD CON LAS DETERMINACIONES DE HECHOS ADICIONALES O ENMENDADAS SOMETIDAS MEDIANTE MOCIÓN RADICADA BAJO LAS REGLAS 43.1, 43.2 Y 47 DE LAS DE PROCEDIMIENTO CIVIL.

> **SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCARTAR UNA ESTIPULACIÓN ESCRITA Y FIRMADA POR AMBAS PARTES QUE SE CONVIRTIÓ EN UNA ADMISIÓN DE HECHOS SIN QUE SE PROBARA SU IMPROCEDENCIA.

---

[45] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XXVI, pág. 644.
[46] Véase *Sentencia* del alfanumérico TA2025AP00260.
[47] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XXVII, pág. 645.

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU INTERPETACIÓN DE LA <u>PRUEBA DOCUMENTAL Y TESTIFICAL</u> AL ESTABLECER COMO UN HECHO Y CONCLUIR QUE EL CONTRATO EN CONTROVERSIA NUNCA FUE REGISTRADO EN LA OFICINA DEL CONTRALOR FUNDAMENTÁNDOSE EXCLUSIVAMENTE EN UNA CERTIFICACIÓN DE LA OFICINA DEL CONTRALOR Y UNA INTERPRETACIÓN INCOMPLETA Y ERRADA DEL TESTIMONIO DE LA FUNCIONARIA DE LA OFICINA DEL CONTRALOR.

Mediante *Resolución* emitida el 24 de abril de 2026, ordenamos al foro de instancia a remitirnos los autos originales del expediente judicial del caso del título, con la prueba relacionada al recurso de autos. De igual forma, le requerimos nos remitiera la regrabación de la vista evidenciaria objeto de este recurso. El foro de instancia cumplió con ambos requerimientos.

El 27 de abril de 2026, la parte apelante presentó escrito al cual adjuntó la transcripción de la prueba oral (TPO).[48] De ahí, mediante *Resolución* emitida el 27 de abril de 2026, concedimos a la parte apelada hasta el 4 de mayo de 2026, para presentar sus objeciones a la TPO o se entendería como estipulada. De otra parte, concedimos a la parte apelante hasta el 22 de mayo de 2026, para presentar el alegato suplementario. Dispusimos además que, presentado el alegato suplementario, la parte apelada tendría un término de treinta (30) días para presentar el correspondiente alegato en oposición.

El 4 de mayo de 2026, compareció el Municipio mediante *Moción en cumplimiento de resolución* para informar sus objeciones a la TPO. Mediante *Resolución* del 5 de mayo de 2026, acogimos la TPO con las correcciones presentadas por el Municipio y le recordamos a la parte apelante que debía cumplir con nuestra *Resolución* del 27 de abril de 2026, mediante la cual se le indicó la fecha límite para presentar el alegato suplementario.

---

[48] SUMAC TA, a la Entrada Núm. 10, Anejo 1.

En cumplimiento, el 19 de mayo de 2026, la parte apelante presentó el correspondiente alegato suplementario.

Finalmente, el 18 de junio de 2026, compareció el Municipio mediante su *Alegato en oposición*. Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

## A. La Apreciación de la Prueba y Deferencia Judicial

Como es sabido, tanto el ejercicio discrecional de apreciación de la prueba que efectúa el Tribunal de Primera Instancia como las determinaciones de hecho que establece están revestidas de confiabilidad y merecen gran deferencia.[49] Ello, toda vez que es el foro primario quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[50] Esto, al contrario del Tribunal de Apelaciones, quien cuenta, únicamente, con récords mudos e inexpresivos.[51] Así, pues, en nuestro sistema de justicia, la discreción judicial permea la evaluación de la prueba presentada en los casos y controversias.[52]

Por lo anterior, las decisiones discrecionales que toma el foro primario no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[53] Un tribunal de justicia incurre en un abuso de discreción cuando el juez, sin fundamento para ello: (i) no toma en cuenta e ignora en la decisión que emite un hecho material importante que no podía ser pasado por alto; (ii) concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o (iii) no toma en cuenta todos los hechos

---

[49] *Trinidad v. Chade*, 153 DPR 280, 291 (2001), citando a *Pueblo v. Torres Rivera*, 137 DPR 630 (1994).

[50] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

[51] *S.L.G. Rivera Carrasquillo v. A.A.A*, 177 DPR 345, 356 (2009); *Trinidad v. Chade, supra*, a la pág. 291.

[52] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).

[53] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

materiales e importantes, descarta los relevantes, así como los sopesa y calibra livianamente.[54]

Como corolario de lo anterior, nuestro Tribunal Supremo ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[55] Se ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala, e incluso antes de que se someta prueba alguna.[56] Con relación al error manifiesto, un juzgador incurre en este cuando, de un análisis de la totalidad de la evidencia, este Tribunal de Apelaciones queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[57] Igualmente, se podrá intervenir con la determinación del tribunal de instancia cuando la valoración de la prueba se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[58]

No obstante, lo anterior, cabe destacar que el Alto Foro ha resuelto que, en instancias en las cuales las determinaciones de hecho que realice el foro primario estén basadas en prueba pericial o documental, el tribunal revisor estará en la misma posición para revisar la prueba.[59] Por tanto, en dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la

---

[54] *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).

[55] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

[56] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).

[57] *Dávila Nieves v. Meléndez Marín,* supra, a la pág. 772.

[58] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219; *González Hernández v. González Hernández,* supra, a la pág. 777.

[59] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219.

apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[60]

Huelga señalar que, aunque según vimos, la apreciación de la prueba no está exenta de toda revisión, si la actuación del tribunal de instancia no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio de este foro, que es a quien corresponde la dirección del proceso.[61] Por ende, los foros apelativos solo podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que de esta surjan serias dudas, razonables y fundadas. Ahora bien, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo.[62]

### B. El Registro de Contratos en la Oficina del Contralor

La Ley de Registros de Contratos se promulgó a los fines de "requerir que los departamentos, agencias, instrumentalidades y municipios mantengan un registro de contratos y envíen copia de los contratos que otorguen a la Oficina del Contralor de Puerto Rico".[63] Esto, por una parte, con el propósito de dar publicidad a toda contratación gubernamental, de forma que se promueva la legalidad y pureza de dicha gestión.[64] Mientras que, por otro lado, para facilitar la labor de auditoría de la Oficina del Contralor, así como para ofrecer al Pueblo de Puerto Rico la oportunidad de conocer sobre toda actuación gubernamental en el ámbito de la contratación.[65]

Particularmente, el Artículo 1(a) de la Ley de Registros de Contrato dispone que:

---

[60] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219*; Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001); *Prieto v. Mary land Casualty Co.*, 98 DPR 594, 623 (1970).
[61] S*ierra v. Tribunal Superior*, supra, a la pág. 572.
[62] *Rivera Pérez v. Cruz Corchado*, supra, a la pág. 14.
[63] Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97 *et seq.*
[64] *Íd.*, Exposición de Motivos.
[65] *Íd.*

[l]as entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, **sin excepción alguna**, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor **dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato** o la enmienda. Este período será extendido a treinta (30) días cuando el contrato se otorgue fuera de Puerto Rico.[66]

Respecto a las entidades municipales, el inciso (b) del aludido articulado indica que se refieren a los municipios del Estado Libre Asociado de Puerto Rico (ELA), incluyendo las corporaciones municipales especiales y los consorcios.[67] Por otro lado, conviene mencionar que el inciso (d) del mencionado Artículo es enfático en que "ninguna prestación o contraprestación objeto de un contrato **podrá exigirse hasta tanto se haya dado cumplimiento a lo dispuesto en el Artículo 1 de esta Ley**".[68] Ahora bien, aclara que "[b]ajo ningún concepto se entenderá que este Artículo permite el otorgamiento de los contratos de servicios profesionales o consultivos de las agencias y entidades gubernamentales de forma retroactiva".[69]

Por último, precisa acentuar, respecto a la señalada Ley de Registros de Contrato, que, en todo contrato sujeto a registro conforme al Artículo 1, se consignará un aviso que leerá como sigue: ***"[n]inguna prestación o contraprestación objeto de este contrato podrá exigirse hasta tanto el mismo se haya presentado para registro en la Oficina del Contralor a tenor con lo dispuesto en la Ley Núm. 18 de 30 de octubre de 1975, según enmendada"***.[70]

Establecido lo anterior, conviene mencionar que, para la fecha en la que se suscribió el Contrato en controversia, se encontraba vigente el Reglamento Número. 33 (5743) sobre Registro de

---

[66] Artículo 1 (a) de la Ley Núm. 18, *supra*, 2 LPRA sec. 97. (Énfasis nuestro).
[67] *Íd.*, Artículo 1 (b).
[68] *Íd.*, Artículo 1 (d). (Énfasis nuestro).
[69] *Íd.*
[70] *Íd.*, Artículo 1 (e). (Énfasis en el original).

Contratos, Escrituras y Documentos Relacionados y Envío de Copias a la Oficina del Contralor. Este Reglamento se adoptó, esencialmente, "con el propósito de establecer las normas y procedimientos generales a seguirse por todas las entidades gubernamentales en la preparación del indicado registro y en la radicación de copia de los contratos, escrituras y documentos relacionados en la Oficina del Contralor".[71] Sobre el señalado Registro, este Reglamento disponía que "cada entidad gubernamental mantendrá un registro de todos los contratos, escrituras y documentos relacionados que otorgue, así como de cualquier enmienda a los mismos, acuerdo, determinación, constancia o acción que lo resuelva o deje sin efecto.[72] En cuanto al contenido del registro, el Reglamento era enfático que todos los contratos, escrituras y documentos relacionados serían anotados en orden de los números asignados y de la fecha de otorgamiento.[73] Por eso, era necesario que los contratos, escrituras y documentos relacionados tuviesen un número, el cual consistía en la última cifra del año fiscal en que se otorgó, seguido del número que hacía dentro de ese año, en orden progresivo de uno (1) en adelante.[74] Esto también, puesto a que en el registro de la Oficina del Contralor debía colocarse el número asignado por la entidad al documento.[75]

Al igual que la Ley de Registros y Contratos, el Reglamento Núm. 33 exigía que "cada entidad gubernamental remita a la Oficina del Contralor de Puerto Rico, copia de todo contrato, escritura y documento relacionado que otorgue dentro de los quince (15) días

---

[71] Artículo 2 del Reglamento Núm. 33 sobre Registro de Contratos, Escrituras y Documentos Relacionados y Envío de Copias a la Oficina del Contralor del 28 de enero de 1998. (Derogado). Puntualizamos que el Reglamento que actualmente se encuentra vigente sobre este particular es el Reglamento sobre registro de contratos de la Oficina del Contralor del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 9571 del 3 de julio de 2024.

[72] *Íd.*, Artículo 4. (Derogado).

[73] *Íd.,* Artículo 5. (Derogado).

[74] *Íd.*

[75] *Íd.*, Artículo 10 (3). (Derogado).

siguientes a la fecha del otorgamiento [. . .]".[76] Exceptuando aquellos que se incluían en el Artículo 9-a del Reglamento.[77] Entre estos se encontraban:

> 1) De servicios personales de naturaleza esporádica, por un término menor de seis meses, no prorrogable, y un costo menos de dos mil (2,000) dólares.
>
> 2) De servicios personales de naturaleza profesional por un término de un año o menos, no prorrogables, y cuyos servicios no constituyan un puesto o empleo y su costo no exceda de cinco mil (5,000) dólares.
>
> [. . .].[78]

Una vez se efectuaba la radicación del contrato, escritura o documento relacionado en la Oficina del Contralor, esta acreditaría su recibo a la entidad gubernamental.[79] El registro de dicha documentación se conservaría por un término de seis (6) años.[80] Durante ese tiempo, la Oficina del Contralor, a solicitud de parte interesada, expediría copia de cualquier documento que mantuviese en el registro.[81]

Puntualizamos que el Reglamento 33 concedía potestad a la Oficina del Contralor para emitir cartas circulares a los fines de establecer las guías que considerara procedentes para que las entidades gubernamentales cumplieran con este Reglamento. En virtud de lo anterior, el 6 de febrero de 1998, se emitió una Carta Circular sobre el Registro y envío de contratos, escrituras y documentos relacionados a la Oficina del Contralor.[82] En lo pertinente, esta carta circular, esencialmente, disponía que, a partir del 2 marzo de 1998, no sería necesario enviar a la Oficina del Contralor copia de los contratos y demás documentos en papel.[83] En adelante, la documentación se enviaría en disquete, así como que

---

[76] Artículo 6 (a) del Reglamento Núm. 33, *supra.* (Derogado).
[77] *Íd.*
[78] *Íd.,* Artículo 9 (a) (Derogado).
[79] *Íd.,* Artículo 8. (Derogado).
[80] *Íd.,* Artículo 10 (b). (Derogado).
[81] *Íd.,* Artículo 11 (b). (Derogado).
[82] Carta Circular OC-98-64 de la Oficina del Contralor del 6 de enero de 1998, pág. 1.
[83] *Íd.*

redactarían sus contratos y demás documentos a través del programa Word o uno similar.[84] Para esto, las entidades gubernamentales utilizarían el Modelo OC-08-07 (Registro de Contratos, Escrituras y Documentos Relacionados) para mantener su registro y enviar los documentos a la Oficina del Contralor.[85] Asimismo, para cada otorgamiento sujeto a inscripción en el Registro se llenaría un Modelo OC-08-08 (Certificación sobre Otorgamiento sobre Contrato, Escritura y Documentos Relacionados), el cual sería suscrito por todos los comparecientes simultáneamente al otorgamiento, con el propósito de acreditar cada acto de otorgamiento ante la Oficina del Contralor.[86] Así, pues, con el disquete, las referidas entidades debían enviar original y copia del Modelo OC-08-07 y dos (2) copias en papel del Modelo OC-08-08. En respuesta, la Oficina del Contralor debía devolver copia de cada uno de los modelos con acuse de recibo.[87]

Por último, la Carta Circular advertía que era responsabilidad del jefe de cada entidad gubernamental asegurar que todo lo que se les solicitaba para el registro del contrato se enviara en los términos establecidos por la Ley Núm.18.[88] De lo contrario, se podía afectar la validez del negocio jurídico y dar lugar a que los servidores públicos concernidos incurrieran en responsabilidad.[89]

### III

Ante nuestra consideración se encuentra un recurso de apelación mediante el cual la parte apelante sostiene que la primera instancia judicial cometió tres (3) errores que ameritan la revocación de la *Sentencia* apelada y, en consecuencia, la continuación de los procedimientos en este caso.

---

[84] Carta Circular OC-98-64, *supra,* a la pág. 1.
[85] *Íd.,* a la pág. 2.
[86] *Íd.*
[87] *Íd.*
[88] *Íd.*
[89] *Íd*

En el *primer* error, la parte apelante plantea que el tribunal de instancia falló al no reconsiderar o enmendar la *Sentencia* apelada, de conformidad con ciertas determinaciones de hecho adicionales propuestas mediante una moción de reconsideración presentada por esta parte. En su *segundo* señalamiento de error, esgrime que fue un error el haber descartado una estipulación de las partes, sin que se probara su improcedencia. Por último, en el *tercer* error sostiene que incidió el tribunal *a quo* al interpretar la prueba documental y testimonial concluyendo que el Contrato objeto del presente caso nunca fue registrado en la Oficina del Contralor. Tras juzgar que los errores se encuentran sustancialmente relacionados, procederemos a discutirlos en conjunto.

En resumido, el Municipio y el señor Vázquez Torres suscribieron un contrato de servicios profesionales el 19 de marzo de 1999. Posterior a esta fecha no suscribieron contrato adicional alguno. Conforme se desprende de los autos, luego de que el señor Vázquez Torres realizara ciertas gestiones relacionadas al Contrato otorgado entre las partes, le requirió al Municipio el pago de los honorarios relacionados a las mismas. Así las cosas, el señor Vázquez Torres interpuso la *Demanda* de autos en la cual adujo que el Municipio le adeudaba los honorarios por los servicios prestados, por lo que peticionó se le condenara al pago.

Tras estudiar con detenimiento la historia procesal del presente caso, la cual data de poco más de diecinueve (19) años, se desprende con claridad la infinidad de eventos procesales que han marcado el mismo, incluyendo trámites apelativos ante esta Curia, así como ante el Alto Foro. De ahí, que hemos repasado con particular atención cada una de esas instancias, con la finalidad de comprender adecuadamente la controversia de autos.

Corresponde en este punto, destacar ciertas incidencias procesales que nos han servido para trazar los linderos de la controversia ante nos. Elaboramos.

Sin el ánimo de resultar reiterativos, pero, según hemos reseñado, el señor Vázquez Torres instó una acción de cobro de dinero contra el Municipio, luego de alegar haber otorgado un Contrato mediante el cual se comprometió a realizar una investigación sobre posibles deudas que tuviese la AEE con el Municipio. Acotó que, luego de haberse logrado un acuerdo transaccional, este era acreedor del por ciento pactado, a razón del diez por ciento (10%) del beneficio económico obtenido por el Municipio, a raíz de su gestión. Reclamó la suma de $632,621.47 dólares. Luego de varios incidentes procesales, el Municipio planteó que el pleito debía ser desestimado fundamentando en que las alegaciones no justificaban la concesión de un remedio y que la deuda era inexistente. Esgrimió también, que debía desestimarse la causa de acción o, en la alternativa, dictarse sentencia de forma sumaria.

Por su parte, el señor Vázquez Torres se opuso y solicitó se dictara sentencia sumaria a su favor. Fue entonces cuando la primera instancia judicial emitió una primera *Sentencia*. En ella, declaró *No Ha Lugar* la *Demanda* de autos, concluyendo que el señor Vázquez Torres no tenía derecho a percibir los honorarios contingentes pactados, razonando que el Municipio no recibió ningún beneficio económico por los servicios profesionales prestados durante la vigencia del contrato. De ahí, el señor Vázquez Torres acudió al foro intermedio,[90] quien refrendó lo ya resuelto, por lo que, posteriormente, este acudió al Alto Foro.

---

[90] En el alfanumérico KLAN201301217.

Subsiguientemente, sobre dicha única controversia, la última instancia judicial dispuso revocar a los tribunales inferiores y mediante *Sentencia* emitida el 4 de mayo de 2016,[91] devolvió el caso al foro de instancia para que celebrara una vista en la cual se le permitiera al señor Vázquez Torres presentar prueba que demostrara que el beneficio económico recibido por el Municipio fue producto de su trabajo. Conviene mencionar que, mediante una nota alce, el Alto foro dispuso en su sentencia lo siguiente:

> resulta necesario dejar sin efecto toda estipulación que limite la facultad del Tribunal de Primer Instancia para adjudicar el caso de autos conforme al derecho aplicable y lo aquí resuelto.[92]

Devuelto el caso al foro de instancia, continuaron los procedimientos.

De lo que sigue, tiempo después, se presentó una *Demanda enmendada*, la cual fue contestada por el Municipio. Fue en la antedicha contestación, que el Municipio esgrimió que el Contrato que nos ocupa nunca fue registrado en la Oficina del Contralor, por lo que arguyó que el señor Vázquez Torres no tenía derecho de cobrar las cantidades reclamadas.

En lo atinente, posteriormente el Municipio interpuso otra solicitud de sentencia sumaria. En esta ocasión, arguyó que, entre otras cosas, no existía controversia de hechos en torno a que el Contrato suscrito entre el Municipio y el señor Vázquez Torres nunca fue registrado en la Oficina del Contralor. A tenor, solicitó que se desestimara la causa de acción a su favor. Por su parte, la parte apelante sostuvo que, allá para el año 2011, las partes habían estipulado que el 15 de marzo de 1999, el Municipio obtuvo una Certificación de la Oficina del Contralor y, por tanto, debía

---

[91] En el alfanumérico CC-2014-0660.
[92] Véase SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit X, pág. 213, nota al calce número 15.

denegarse lo solicitado. Además, añadió que, en virtud de lo resuelto por el Alto Foro, se señalara la vista ordenada.

Sometido el asunto, el tribunal *a quo* denegó la solicitud de sentencia sumaria interpuesta por el Municipio. Conviene puntualizar que, entre los asuntos en disputa que el foro de instancia estimó que existían, se encontraba el determinar si existía controversia en cuanto a la registración del Contrato entre las partes en la Oficina del Contralor, por lo que procedía la celebración de un juicio plenario.

Sobre esta decisión, la parte apelante interpuso un recurso de *certiorari* ante este Tribunal,[93] pero un Panel hermano dispuso denegar la expedición del auto.

Luego, durante la celebración de una vista, la parte apelante sugirió al Tribunal que, previo a señalar el juicio en su fondo, debía celebrarse una vista evidenciaria para disponer sobre la controversia relacionada a si el Contrato había sido registrado en la Oficina del Contralor, ya que dicha cuestión podría resolver el caso. Entonces, el foro *a quo*, dispuso señalar una vista para atender específicamente este asunto. Subsiguientemente, las partes presentaron un *Informe de conferencia preliminar entre abogados*.

Llegado el día de la vista, tal y cual adelantado, se atendió la controversia sobre si se registró o no el Contrato en la Oficina del Contralor. Así que, la primera instancia judicial recibió tanto prueba testimonial como documental.

Se desprende tanto de la transcripción de la prueba oral, así como que pudimos escuchar de la grabación de los procedimientos, que las partes tuvieron amplia oportunidad para interrogar y contrainterrogar. De igual forma, la juzgadora de los hechos también

---

[93] En el alfanumérico KLCE202200017.

tuvo oportunidad para aclarar las dudas que surgieron durante los turnos de preguntas.

Finalmente, el caso quedó sometido y la primera instancia judicial dictó la *Sentencia* objeto de este recurso. Mediante su dictamen, declaró *No Ha Lugar* la Demanda. Por otro lado, incorporó las determinaciones de hechos previamente esbozadas en su *Resolución* del 15 de octubre de 2021, así como que esgrimió otras cuarenta y una (41). Concluyó que el Contrato no fue registrado en la Oficina del Contralor, por lo que la reclamación interpuesta carecía de legitimidad. En este punto, conviene mencionar que, conforme se desprende de la *Resolución* del 15 de octubre de 2021, en la determinación de hecho número uno (1), el tribunal de instancia había encontrado como hecho no controvertido que "[e]l 15 de marzo de 1999[,] la Oficina del Contralor emitió una Certificación sobre el otorgamiento de un contrato en el cual, los suscribientes lo son el señor Vázquez y el Municipio".

Sin embargo, al repasar la *Sentencia* apelada, vemos que cuando el foro primario transcribió la referida determinación en el dictamen apelado la tachó, por lo que podemos concluir que la dejó sin efecto mediante tachadura. Seguido, la parte apelante interpuso una solicitud de reconsideración y sobre determinaciones de hechos adicionales, la cual fue denegada.

Conforme reseñamos en nuestra exposición doctrinal previa, la Ley de Registro de Contratos, la cual se promulgó a los fines de dar publicidad a toda contratación gubernamental,[94] incluyendo la proveniente de los municipios, es clara en que todas la entidades gubernamentales y municipales deben, **sin excepción alguna**, mantener registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y, luego, remitir copia de estos a la Oficina

---

[94] Exposición de motivos de la Ley Núm. 18, *supra.*

del Contralor a los quince (15) días **siguientes a la fecha de otorgamiento del contrato** o enmienda.[95] De manera que "ninguna prestación o contraprestación objeto de un contrato podrá exigirse hasta tanto se haya dado cumplimiento a lo dispuesto en el Artículo 1 de esta Ley".[96] Así, pues, el referido cuerpo normativo exige que en los contratos sujetos a registro en la Oficina del Contralor se consigne un aviso que lea: ***"[n] prestación o contraprestación objeto de este contrato podrá exigirse hasta tanto el mismo se haya presentado para registro en la Oficina del Contralor a tenor con lo dispuesto en la Ley Núm. 18 de 30 de octubre de 1975, según enmendada".[97]***

Según ya explicamos, para la fecha en que suscribió el Contrato en controversia se encontraba vigente el Reglamento Núm. 33, el cual establecía, entre otras cosas, las normas y procedimientos a seguirse en radicación de contratos en la Oficina del Contralor.[98] Esto, ya que en la Oficina del Contralor se identificaba el contrato con el numero asignado al documento por la entidad gubernamental.[99] Conviene mencionar, que, radicado el contrato en la Oficina del Contralor, el Reglamento Núm. 33 disponía para que se acreditara el recibo a la oficina gubernamental correspondiente.[100]

Finalmente, huelga reseñar que, en virtud del referido Reglamento, el 6 de febrero de 1998, se emitió una Carta Circular sobre el Registro y envío de contratos, escrituras y documentos relacionados a la Oficina del Contralor.[101] El fin principal de esta carta era explicar que, en adelante, no sería necesario enviar a la Oficina del Contralor copia de los contratos y demás documentos en

---

[95] Artículo 1 (a) de la Ley Núm. 18, *supra*, 2 LPRA sec. 97.
[96] *Íd.*, Artículo 1 (d).
[97] *Íd.*, Artículo 1 (e).
[98] Artículo 5 del Reglamento Núm. 33, *supra.* (Derogado).
[99] *Íd.*, Artículo 10 (3). (Derogado).
[100] *Íd.,* Artículo 8. (Derogado).
[101] Carta Circular OC-98-64, *supra.*

papel, si no que los mismos se enviarían en disquete. De forma que se autorizaba a que contratos se redactaran a través del programa Word o uno similar.[102] En lo pertinente a este caso, es importante puntualizar que, a raíz de esta nueva normativa, se dispuso mediante esta carta que para cada otorgamiento se llenaría el Modelo OC-08-08, el cual sería suscrito por todos los comparecientes simultáneamente al otorgamiento, con el propósito de acreditar cada acto de otorgamiento ante la Oficina del Contralor.[103] Este documento debía remitirse en original y copia con el disquete a la Oficina del Contralor.[104]

Con lo anterior en mente, y luego de estudiar detenidamente el expediente ante nuestra consideración, incluyendo el apéndice del recurso, los autos originales del caso ante el foro de instancia, la transcripción de la prueba oral y regrabación de la vista del 26 de septiembre de 2023, no le es posible a esta Curia llegar a la conclusión de que el Contrato fue registrado en la Oficina del Contralor. Nos explicamos.

Ante nuestra consideración se encuentra un Contrato con fecha del 19 de marzo 1999, otorgado por una parte por el Municipio Autónomo de Carolina, y, de otra parte, por el señor Vázquez Torres, hoy fallecido.[105] Lo primero que resalta de este Contrato es el hecho de que no tiene número. El Reglamento Núm. 33 antes reseñado era claro en que todo contrato que fuese a ser registrado en la Oficina del Contralor debía de tener un número, el cual consistía en la última cifra del año fiscal en que se otorgó, seguido del número que hacía dentro de ese año, en orden progresivo de uno (1) en adelante.[106] El número de contrato era esencial para que la Oficina

---

[102] Carta Circular OC-98-64, *supra,* a la pág. 1.
[103] *Íd.,* pág. 2.
[104] *Íd.*
[105] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XXI, págs. 386-393.
[106] Artículo 5 del Reglamento Núm. 33, *supra.* (Derogado).

del Contralor identificara el documento.[107] Lo anterior, fue enfatizado durante el testimonio, vertido en corte abierta durante la vista evidenciaria, por la señora Cruz Flores, quien para entonces era Administradora de Documentos en el Programa de Administración de Documentos Públicos de la Oficina del Contralor. Esta expresó que los contratos debían tener número de contrato.[108] Explicó que la importancia del número del contrato es identificar el documento.[109] Indicó que, dado a que el Contrato en cuestión no tenía número de contrato, ***no se pudo haber registrado*** en la Oficina del Contralor, porque no había forma de identificar el documento.[110] Siendo así, si el contrato se presentó para su registro se le tenía que devolver al Municipio.[111] Respecto al registro del contrato que nos ocupa, es importante destacar que en autos se encuentran dos (2) Certificaciones:[112] una con fecha del 31 de julio de 2007, en la cual se certificó que "no aparece registrado contrato alguno entre el Municipio de Carolina y el Sr. Ramón Vázquez, para el periodo del 1 de julio de 1998 al presente",[113] y otra del 28 de junio de 2021.[114] Esta última fue preparada por la testigo, la señora Cruz Flores en la cual se certificó que "no aparecen registrados contratos entre el Municipio de Carolina y el Sr. Ramón Vázquez Torres, durante el periodo del 1 de enero de 1999 al presente. La referida testigo manifestó que "si [le] solicitan una certificación de un contrato y se hace la búsqueda en el sistema, el contrato aparece registrado, pues se hace una certificación positiva. Si no [les] aparece en [el] sistema, se emite una certificación negativa".[115] Atestiguó que las certificaciones habidas en autos, eran

---

[107] Artículo 10 (3) del Reglamento Núm. 33, *supra*. (Derogado).
[108] Transcripción de la Prueba Oral (TPO), a la pág. 73, líneas 7-8.
[109] *Íd.*, pág. 79, líneas 19-21.
[110] *Íd.*, a la pág. 152, líneas 1-3.
[111] *Íd.,* líneas 4-6.
[112] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Exhibit XXI, pág. 554-555.
[113] *Íd.*, a la pág. 555.
[114] *Íd.,* a la pág. 554.
[115] TPO, a la pág. 58, líneas 1-8.

exactamente lo mismo, excepto que tienen fechas distintas y están preparadas por diferentes funcionarios.[116] Explicó que las certificaciones fueron emitidas luego de que en el sistema computadorizado se hizo una búsqueda por distintos renglones: nombre de las partes, seguro social y por la entidad otorgante, es decir, el Municipio de Carolina, pero nada se encontró.[117] Incluso, certificó que la Oficina del Contralor no tenía ninguna constancia del Contrato en cuestión.[118]

Por todo lo antes expuesto, no es posible que concluyamos que el contrato se registró. Más aun, cuando no hay ninguna prueba en los autos que apunte a que, en efecto, el registro se llevó a cabo. Por consiguiente, nos es forzoso coincidir con la primera instancia judicial respecto a este particular.

Ahora bien, la parte apelante insiste en que, allá para el 2011, las partes estipularon que el contrato fue registrado el 15 de marzo de 1999. De manera que la primera instancia judicial abandonó injustificadamente la ley del caso. No estamos de acuerdo.

*Primero*, huelga reseñar que la doctrina de la ley del caso no es inflexible, si el tribunal entiende que su determinación previa era errónea o puede causar una grave injusticia, podría, en exceptuadas ocasiones, aplicar una norma de derecho distinta.[119] *Segundo*, según ya reseñamos, el Alto Foro hizo hincapié en su *Sentencia* del 4 de mayo de 2016, mediante nota al calce, que resultaba necesario dejar sin efecto toda estipulación que limitara la facultad del Tribunal de Primera Instancia para adjudicar el caso de autos. *Tercero*, de ninguna manera se puede interpretar que las partes estipularon que el contrato fue registrado el 15 de marzo de 1999. Abundamos.

---

[116] TPO, a la pág. 98, líneas 11-21.
[117] *Íd.,* a la págs. 102 y 103, líneas 1-9 y 19-25, respectivamente.
[118] *Íd.,* a la pág. 93, líneas 11-19.
[119] *Berkan et al. v. Mead Johnson Nutrition* DPR 183, 201 (2020); *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 9 (2016)

La alegada estipulación a la que hace referencia la parte apelante surge de un *Informe de conferencia con antelación a juicio* presentado por las partes el 9 de junio de 2011. Específicamente, las partes estipularon que el 19 de marzo de 1999, otorgaron un Contrato y acordaron que ese fue el único contrato suscrito entre las partes. Asimismo, estipularon que el Municipio obtuvo la certificación de la Oficina del Contralor del referido Contrato. Estipularon, igualmente, la referida certificación.[120] De hecho, esta certificación se encuentra en autos, y, según se desprende de la vista del 26 de septiembre de 2023, la misma fue producida por el propio Municipio.[121] Al revisar con detenimiento el documento, se desprende que esta corresponde al Modelo OC-08-08, es decir, la Certificación sobre Otorgamiento sobre Contrato, Escritura y Documentos Relacionados. En mérito de la Carta Circular OC-98-64, esta certificación debía ser suscrita por todos los comparecientes *simultáneamente al otorgamiento del contrato*, con el propósito de acreditar cada acto de otorgamiento ante la Oficina del Contralor.[122] Igualmente, según la referida carta, las entidades debían enviar a la Oficina del Contralor dos (2) copias en papel del Modelo OC-08-08 junto con el contrato, entre otros documentos.[123] Luego, la Oficina del Contralor debía devolver copia del modelo con acuse de recibo.[124]

De la Certificación en autos se desprenden dos (2) cuestiones esenciales. La *primera* es que esta tiene fecha del 15 de marzo de 1999, mientras que el contrato fue otorgado días más tarde, el 19 de ese mismo mes y año. La Carta Circular OC-98-64 es clara en que la certificación debe ser suscrita simultáneamente al otorgamiento de contrato, cosa que no ocurrió en este caso.

---

[120] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Recurso Exhibit XXI, pág. 511.
[121] TPO, a las págs. 185-187.
[122] Carta Circular OC-98-64, *supra.*
[123] *Íd.*
[124] *Íd.*

*Segundo,* la certificación no contiene ningún ponche de la Oficina del Contralor que acredite que esta fue entregada a esta entidad junto al contrato en cuestión. De forma que el referido documento en nada aporta a la teoría de la parte apelante, respecto a que el contrato fue **registrado**. Además, resaltamos que, aun si entendiéramos que la referida certificación y el Contrato en cuestión fueron suscritos en la misma fecha, la ley es clara en que ninguna prestación o contraprestación objeto de un contrato podrá exigirse hasta tanto se haya registrado en la Oficina del Contralor.[125] En otras palabras, **no basta con que la certificación se haya suscrito**, **lo que importa es que se hubiese presentado en la Oficina del Contralor**, y sobre esto último **no** hay constancia.

Finalmente, destacamos que, en sus señalamientos de error, la parte apelante arguye que el tribunal de instancia falló al no reconsiderar o enmendar la sentencia de conformidad con las determinaciones de hechos adicionales o enmendadas sometidas mediante moción. Tampoco estamos de acuerdo.

En la referida moción, la parte apelante propuso unas determinaciones de hechos adicionales relacionadas a ciertas partes del testimonio de la señora Cruz Flores, en las cuales explicó que los documentos físicos en la Oficina del Contralor se destruían a los 6 años.[126]. Así como que esta admitió, a preguntas del representante legal de la parte apelante, que pudo haber contratos que se firmaron en 1999, pero que no aparecen en el registro.[127]

Respecto a la evaluación de la prueba, la Regla 110 de Evidencia establece que el juzgador de los hechos tiene el deber de "evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados".[128]

---

[125] Artículo 1 (d) de la Ley Núm. 18, *supra,* 2 LPRA sec. 97.
[126] TPO, a la pág. 145, líneas 2-12.
[127] *Íd.*, a la pág. 148, líneas 9-19.
[128] 32 LPRA Ap. VI, R. 110.

Asimismo, la aludida regla, establece que "[p]ara establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza".[129] Más bien, se requiere que la totalidad de la prueba haga más probable cierta conclusión.[130]

Cónsono con lo anterior, la evaluación de la prueba incluye la credibilidad y el valor probatorio que el juzgador le haya dado a la misma. En lo particular, "[l]a función del tribunal al analizar si la evidencia es susceptible de ser creída sólo requiere determinar si la evidencia puede ser creída por una persona razonable y de conciencia no prevenida, sin entrar a dirimir la credibilidad que amerita la prueba presentada".[131] Incluso, según la Regla 110 (d) de Evidencia, basta al juzgador de los hechos la credibilidad a un solo testigo presentado, por una parte, para dar por acontecido tal hecho.[132] Sobre este particular, nuestro Tribunal Supremo de Puerto Rico estableció que "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz".[133]

Conforme reseñamos previamente, el ejercicio discrecional de apreciación de la prueba que efectúa el foro primario, así como las determinaciones de hecho que establece, merecen confiabilidad y deferencia.[134] Siendo así, las decisiones discrecionales que toma el foro primario no deben ser revocadas, a menos que estén presentes indicios de pasión, prejuicio, parcialidad o error manifiesto, o

---

[129] 32 LPRA Ap. VI, R. 110.
[130] *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 529 (2011).
[131] *Pueblo v. Colón, Castillo*, 140 DPR 564, 582 (1996).
[132] 32 LPRA Ap. VI, R.110.
[133] *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).
[134] *Trinidad v. Chade*, supra, a la pág. 291.

cuando un análisis integral de la prueba así lo justifique.[135] Tras un detenido examen de toda la prueba recibida por el tribunal, tanto oral como documental, de ninguna manera podemos determinar que incidieron circunstancias extraordinarias que ameriten revocar lo apreciado por la primera instancia judicial. Al contrario, esta Curia entiende que el referido foro hizo un análisis correcto ante la prueba que el Tribunal tuvo ante su consideración.

En mérito de todo lo antes expuesto concluimos que ninguno de los errores señalados por la parte apelante se cometió, por lo que procede confirmar el dictamen apelado.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[135] *Coop. Seguros Múltiples de P.R. v. Lugo*, supra, a la pág. 208.